# UNITED STATES DISTRICT COURT
for the

District of Colorado

| | |
|---|---|
| United States of America ) | |
| ) | |
| v. ) | Case No. 20-mj-00054-NYW |
| ) | |
| BRADLEY BUNN ) | |
| *Defendant(s)* ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief:

On or about May 1, 2020, in the State and District of Colorado, the defendant, BRADLEY BUNN, knowingly possessed a firearm, specifically, a destructive device as defined in Title 18 United States Code, Section 5845(a)(8) and 5845(f), which was not registered to him in the National Firearms Registration and Transfer Record.

*Code Section* — *Offense Description*
26 U.S.C. §§ 5841, 5845, 5861(d), and 5871 — Possessing Unregistered Firearms

This criminal complaint is based on these facts:

See Affidavit attached hereto and herein incorporated by reference.

**X** Continued on attached sheet.

*Complainant's signature*

SA, FBI
*Printed name and title*

Sworn to before me and: ☐ signed in my presence.
☒ submitted, attested to, and acknowledged by reliable electronic means.

Date: **02 May 2020**

*Judge's signature*
Nina Y. Wang
United States Magistrate Judge
*Printed name and title*

City and state: Denver, Colorado

### Affidavit in Support of Criminal Complaint

I, _____ Special Agent with the Federal Bureau of Investigation, being duly sworn, deposes and states under penalty of perjury that the following is true to the best of my information, knowledge, and belief.

### BACKGROUND

1. I am a Special Agent with the United States Federal Bureau of Investigation ("FBI") and have been since July 2014. I received four months of training in criminal investigations and related legal matters at the FBI Training Academy in Quantico, Virginia. Upon completion of training at the FBI Training Academy, I was assigned to the San Antonio Division FBI where I primarily investigated white-collar crimes, specifically those involving public corruption, as set forth in 18 U.S.C. § 1951, et seq., and other related federal criminal violations. In April 2020, I transferred to the Denver Division FBI where I primarily conduct investigations involving national security matters. I have, through training and experience, become familiar with and used all normal methods of investigation, including, but not limited to, visual surveillance, interviewing witnesses, subpoenas, search and arrest warrants, confidential human sources, consensual monitoring, pen registers, undercover operations, and court authorized wiretaps.

2. I make this affidavit based upon my own knowledge, upon electronic records furnished or relayed to me in my official capacity, and upon information and documents furnished to me in my official capacity by other law enforcement agencies, officers, and witnesses. This affidavit does not contain every material fact that I have learned during the course of this investigation. However, no information known to me that would tend to negate probable cause has been withheld from this affidavit.

### FACTS IN SUPPORT OF PROBABLE CAUSE

3. On May 1, 2020, I participated in the execution of a two search warrants at a residence located at 5512 Gabriel Drive, Loveland, CO 80538. According to Colorado Department of Motor Vehicles records, that is the residential address of the defendant, Bradley Bunn. At the time that the first search warrant was executed, at approximately 7:00 AM, Bunn was the only occupant of the residence.

4. During the search, FBI personnel discovered four devices that consisted of a galvanized steel pipe with external threads and an external end cap on each end. One end cap on each device contained a hole through which a fuse had been inserted as an initiating system. Photographs of these devices are copied below:




1




5. After removing the devices from the residence following standard explosive ordnance disposal (EOD) procedures, bomb technicians on scene then transported the devices to a range where they successfully conducted a render safe procedure on each device. After the devices were rendered safe, bomb technicians conducted a thermal susceptibility test on the filler found inside the pipe of each device. In each of the devices, the filler reacted violently to flame, indicating it was energetic, or explosive, material.

6. Based on these characteristics, I understand that these devices are destructive devices, as that term is defined in 26 U.S.C. § 5845(f), and would be regulated in accordance with the Federal Firearm Regulations. Based upon discussions with an officer with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, I understand that Bradley Bunn did not register these devices in the National Firearms Registration and Transfer Record. Furthermore, I understand that these devices were not suitable to be registered because they lacked markings such as a manufacture's name and location.

7. Concurrent to the execution of the search warrant at Bunn's residence, FBI Task Force Officer (TFO) and Special Agent (SA) conducted a custodial interview of Bunn in a vehicle parked in front of the residence. Bunn was advised of his rights pursuant to Miranda, and he waived those rights and agreed to speak with agents. The interview was recorded but has not yet been transcribed. Quotations in this affidavit may not be verbatim transcriptions.

8. When asked initially if he had any kinds or explosives or bombs in his residence, Bunn stated that he had already talked to the FBI about that and he did not want to talk about it.[1]

9. Approximately two hours into the interview, FBI Special Agent Bomb Technician entered the vehicle to speak with Bunn about the devices found during the search of his residence. SA asked what filler Bunn had used in each of the devices, and if it was smokeless or black powder. Bunn replied, "I don't know, I'm a dumbass with this. I don't know."

10. When asked how full he had filled the devices, Bunn replied, "Well that stuff settles. I filled them up within about a half inch from the top. I'm not a sapper", using a slang term for combat engineer, a military occupational specialty involving extensive training in the use of explosives. Bunn continued, "I don't have a lot of experience in this. I haven't done this before. I bought this stuff at

---

[1] Another agent conducted a public safety interview of Bunn pre-*Miranda*. Information from that interview should be admissible under the public-safety exception to the *Miranda* requirement. *See New York v. Quarles*, 467 U.S. 649 (1984). Nevertheless, in an abundance of caution, information received during that interview is not made a part of this affidavit.

Jax. In the white bin underneath the window there are materials. There are two one-pound things of .308 powder," referring to .308 caliber cartridge reloading gunpowder. "I bought black powder, I bought the .308 powder. Because I don't know much about this stuff, I don't exactly know what went into the device that I built. That's the best that I can tell you."

11.     SA              explained to Bunn he was asking detailed questions about the devices because bomb technicians were present in the residence and he did not want anyone to get hurt. Bunn replied, "I've been out throwing them in the field and chucked them on the ground into a wash so it wouldn't be a fragmentation just to make sure, just to test that I can drop the shit and it's not a problem." SA              discussed which powders are more stable and explained if the powder got on the threads it could be bad. Bunn replied, "I was very careful with that."

12.     When asked how he planned to initiate the devices, Bunn replied, "With a lighter. It's a five to seven second fuse like a grenade. I've repeatedly tested the fuse links. It's a hobby fuse." Bunn indicated he ordered the fuses online. SA              stated there were four pipe bombs filled with powder almost to the top and asked if Bunn had greased the threads, to which Bunn replied he had not. Bunn continued, "I used plumbers pipe tape and brushed it off carefully. I'm not a total retard, I just don't know."

13.     When asked again if he had placed fragmentation materials inside any of the devices, Bunn answered, "No, I didn't put any. I was considering buck shot. I mean if you're gonna do a job, do it right. But because I don't have the sufficient knowledge to know what interacts with what, I didn't want to put coating on a ball bearing or something that would interact with the gun powder and cause some kind of chemical reaction I didn't expect."

14.     SA              asked if there were any other explosive materials in the residence besides the four devices. Bunn replied, "There are the shotgun primers on the table with the fuses. I'm sure you saw them. That's all the fuses I have. That's it. Wait, wait, wait... inside the kitchen closet there is another white bin with this kind of stuff in it there might, I think there's a couple pipe parts, but there's nothing built in there. There's no gun powder, just a box of shit I used to build the bombs. There's a pipe with two end caps. They're not assembled, there's no gun powder. It's just what I would put on my bench and work on."

15.     When asked what he planned to do with the devices, Bunn replied, "If I experienced a hard entry, at 3 am, having been an infantry commander, it's really tough to get guys spread out no matter how hard you try. They still want to clump up 'cause of fear, and I know their, their, anyway, blah, blah, blah."

16.     SA              asked, "So a hard entry in the morning, you were going to use them on a bunch of clumped up guys out front?" Bunn answered, "Fuck yes."

17.     Agents did in fact discover additional bomb components in the residence, including galvanized steel pipes, end caps, shotgun primers, fuses, and several bottles of smokeless powder.

/

/

/

18. In view of the forgoing, I submit that there is probable cause to believe that on or about May 1, 2020, in the State and District of Colorado, that Bradley Bunn knowingly possessed a firearm, specifically, a destructive device as defined in Title 18 United States Code, Sections 5845(a)(8) and 5845(f), which was not registered to him in the National Firearms Registration and Transfer Record, all in violation of Title 26, United States Code, Sections 5841, 5845, 5861(d), and 5871.

I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Special Agent, FBI

Sworn to before me this 2nd day of May, 2020.

United States Magistrate Judge

Affidavit reviewed and submitted by David Tonini, Assistant United States Attorney.

4

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT
for the

District of Colorado

| United States of America | ) |  |
|---|---|---|
|  | ) |  |
| v. | ) | Case No. |
|  | ) |  |
|  | ) |  |
|  | ) |  |
| BRADLEY BUNN | ) |  |
| *Defendant* |  |  |

## ARREST WARRANT

TO: Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay *(name of person to be arrested)* BRADLEY BUNN who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment ☐ Superseding Indictment ☐ Information ☐ Superseding Information ☒ Complaint
☐ Probation Violation Petition ☐ Supervised Release Violation Petition ☐ Violation Notice ☐ Order of the Court

This offense is briefly described as follows:

26 U.S.C. §§ 5841, 5845, 5861(d), and 5871- Possessing Unregistered Firearms

Date: **02 May 2020**

City and state: Denver, Colorado

*Issuing officer's signature*
Nina Y. Wang
United States Magistrate Judge
*Printed name and title*

**Return**

This warrant was received on *(date)* _____, and the person was arrested on *(date)* _____ at *(city and state)* _____.

Date: _____

*Arresting officer's signature*

*Printed name and title*

| | |
|---|---|
| DEFENDANT: | BRADLEY BUNN |
| YOB: | 1966 |
| COMPLAINT FILED? | __X__ Yes  _____ No  If Yes, MAGISTRATE CASE NUMBER_____ |
| OFFENSE: | 26 U.S.C. §§ 5841, 5845, 5861(d), and 5871<br>Possessing Unregistered Firearms |
| LOCATION OF OFFENSE: | LARIMER COUNTY, Colorado |
| PENALTY: | NMT 10 years' imprisonment, NMT $250,000 fine or both; NMT 3 years supervised release; $100 Special Assessment. |
| AGENT: | |
| AUTHORIZED BY: | David Tonini<br>Assistant U.S. Attorney |

ESTIMATED TIME OF TRIAL:

  X   five days or less____ over five days

THE GOVERNMENT

X  will seek detention in this case based on 18 U.S.C. § 3142(f)(1)(E)

The statutory presumption of detention is not applicable to this defendant.

OCDETF CASE:       ___ Yes       X  No

1