**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

CASE NO. 20-cr-00158-CMA

UNITED STATES OF AMERICA,

      Plaintiff,

v.

BRADLEY BUNN,

      Defendant.

_____

## MOTION TO SUPPRESS
_____

Defendant Bradley Bunn ("Mr. Bunn"), by and through undersigned counsel ("counsel"), Assistant Federal Public Defender, Matthew C. Golla, respectfully moves for the suppression of any and all evidence discovered as a result of the May 1, 2020, search of his home.[1] In support, Mr. Bunn states:

### STATEMENT OF FACTS

On May 1, 2020, law enforcement applied for a search warrant to search Mr. Bunn's home for evidence that he had illegally possessed a machinegun, in violation of 18 U.S.C. § 922(o). SW '1. The warrant affidavit, while lengthy, contains only the following

---

[1] The government obtained two search warrants for the search of Mr. Bunn's home on May 1, 2020. This motion challenges the validity of the first warrant and seeks the suppression of any and all evidence discovered as a result of the execution of that search. That includes evidence discovered as a result of the second search warrant, which was based on information discovered during the execution of the first search warrant, and statements given by Mr. Bunn during questioning conducted as a result of the unlawful searches.

1

allegations relevant to the alleged machinegun offense that is the subject of the application:

> [Redacted] indicated that on Saturday, April 25, 2020 . . . [redacted] was at the Pawnee Grasslands in an area designated for shooting firearms. At approximately 3:30 pm, [redacted] heard fully automatic gunfire coming from over the hill. [Redacted] indicated he knows the difference between what bump stock and fully automatic gunfire sounds like. [Redacted] said he is an ammunition reloader and went around the hill to ask whoever was shooting if he could collect brass for reloading. As [redacted] came around the hill, he saw a white male, approximately 5'8" with blonde hair and blue eyes. The mail had a 'flat top' style haircut. The male was wearing camouflage clothing and a tactical vest. The male placed an AR style rifle into the back of a dark colored truck (possibly a Chevy Silverado) and began shooting a pistol. There were two other males with him.

SW '6. Mr. Bunn then invited the unnamed witness to attend "an open carry, 2nd amendment rights event" in Denver. *Id.* at '6-7. The remainder of the affidavit generally concerns Mr. Bunn's strong views regarding the Second Amendment and plans to attend the open-carry rally. While some of these allegations are potentially alarming, none are relevant to the question of whether Mr. Bunn possessed a machinegun.

The government sought authorization to search Mr. Bunn's home in relation "to a violation of . . . 18 U.S.C. § 922(o)," which criminalizes the "Possession of a Machinegun." SW '1. The probable cause affidavit asserted that there was "probable cause to believe that evidence, fruits, and instrumentalities of 18 U.S.C. §§ 922(o) [sic]" could be found at Mr. Bunn's home. SW '5-6. The warrant application incorporated a "DESCRIPTION OF ITEMS TO BE SEIZED AND SEARCHED" listing potential "evidence, fruits, proceeds, and instrumentalities of potential violations of Title 18 U.S.C. § 922(o) – Possession of a Machinegun (Subject Offense)," including, for example, "[a]ny firearm that does not have

2

a lawful manufacturer stamp and serial number, any unregistered firearm," "[a]ny items pertaining to the possession, manufacture, or distribution of illegal firearms, including but not limited to, lower receivers, upper receivers, grips, stocks, magazines, trigger assemblies, machinegun conversion kits, and barrels for AR-style firearms." SW '4.

The magistrate judge approved the warrant on May 1, 2020, and a search was executed at Mr. Bunn's home that same day. Law enforcement officers did not find a machinegun, but did observe a satchel apparently containing two pipe bombs. SW '21. Based on that information, the government applied for and obtained a second search warrant additionally authorizing the search of his residence for evidence that Mr. Bunn had violated 26 U.S.C. §§ 5841, 5845, 5861(d), and 5871, which criminalize the possession of unregistered firearms, including destructive devices. SW '14.

Meanwhile, during the execution of the search warrants, law enforcement officers conducted both an un-*Mirandized* "public safety" interview and a *Mirandized* custodial interview of Mr. Bunn. In the course of that questioning, Mr. Bunn made a number of incriminating statements regarding the pipe bombs found during the search of his home. *See* Affidavit in Support of Criminal Complaint, ECF No. 6-1 at 2-3 & n.1 (May 3, 2020).

### ARGUMENT

The Court should suppress any and all evidence obtained as a result of the May 1, 2020, search of Mr. Bunn's home for evidence that he unlawfully possessed a machinegun, in violation of 18 U.S.C. § 922(o), because the underlying warrant was not supported by probable cause.

The Fourth Amendment requires that search warrants be supported by probable cause. When determining whether a warrant application satisfies this constitutional

3

standard, a magistrate judge must consider "whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). On a motion to suppress, the reviewing court must determine whether the magistrate had a "substantial basis" for concluding probable cause existed. *Id.* at 238-39. "While 'probable cause does not demand the certainty we associate with formal trials . . . [s]ufficient information must be presented to the magistrate to allow *that official* to *determine probable cause*; his action cannot be a mere ratification of the bare conclusions of others.'" *United States v. Loera*, 923 F.3d 907, 924 (10th Cir. 2019) (quoting *Gates*, 462 U.S. at 246, 239) (emphasis in original).

*Loera* is instructive on this point. In that case, the magistrate judge had issued a search warrant for evidence of a child pornography offense. The affidavit in support of the warrant application relied heavily on information obtained in the course of an earlier unlawful search. *See* 923 F.3d at 923-24. Once that tainted information was excised, all that remained was the assertion that an FBI examiner had "identified four writable CDs which appeared to contain images of child pornography" in the course of an unrelated investigation of the defendant for computer fraud crimes. *Id.* at 924. The Tenth Circuit deemed this statement insufficient to support probable cause that a child pornography offense had occurred because there was "no detailed description of what the images depicted such that the magistrate could independently assess whether the images meet the legal definition of child pornography." *Id.*

4

The affidavit in this case fails for the same reason. It contains no information from which the magistrate judge could "independently assess" whether the sounds that the unnamed informant heard came from a firearm meeting the legal definition of "machinegun"—let alone that evidence that Mr. Bunn had possessed a machinegun could be found at his home. *Loera*, 923 F.3d at 924; *see* 26 U.S.C. § 5845(b) (defining "machinegun" to mean "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger."). Rather, it rests entirely on an unidentified witness's uncorroborated assertion that "he heard fully automatic gunfire coming from over the hill." SW '6. Under *Loera*, this "bare conclusion[]" of another that a crime had been committed is insufficient to support a finding of probable cause as a matter of law. 923 F.3d at 924.

The affidavit also failed to provide any information from which the magistrate judge could have concluded that the witness was in fact able to identify automatic gunfire, as he claimed. Specialized training or experience is required to identify automatic gunfire. *See United States v. Vest*, 448 F. Supp. 2d 1002, 1005 (S.D. Ill. 2006) (dismissing § 922(o) charge against law enforcement officer whose "duties as rifle instructor" included "teaching [officers] to recognize the sound of various weapons, including automatic, high-powered rifles"). The affidavit does not contain any information that the witness had received such training, that he had prior experience with machineguns, or otherwise corroborate his conclusion that a machinegun was fired in any way. *Cf. United States v. Garcia-Zambrano*, 530 F.3d 1249, 1259 (10th Cir. 2008) (finding reliance on witness's reported identification of the odor of marijuana reasonable, where that report was corroborated by "an officer who was qualified to detect the odor"). This absence of

5

corroboration provides an additional basis for finding that the warrant failed to establish probable cause.

The affidavit is further weakened by the fact that it provides no basis from which the magistrate could conclude that the machinegun, if it even existed, had been possessed by *Mr. Bunn*. The witness did not *see* Mr. Bunn in possession of a machinegun—on the contrary, he only saw Mr. Bunn with what he believed to be an AR-15 style rifle (a semi-automatic weapon) and pistol. And while the witness asserted that he *heard* a machinegun coming from "over the hill," he found three men standing in the area where the sound originated. The affidavit provides no information supporting the conclusion that it was Mr. Bunn—rather than one of his two companions—who had been shooting the machinegun he claimed that he heard, let alone that it was Mr. Bunn—rather than one of his two companions—who owned the firearm and took it home after the outing was over.

In sum, the affidavit's assertion that an unnamed witness heard one of three men firing something that sounded like a machinegun on the other side of a hill is insufficient to establish probable cause. These allegations do not provide a "substantial basis" for concluding there was a "fair probability" that Mr. Bunn had possessed a machinegun, or that evidence of that crime would be found at his home. *Gates*, 462 U.S. at 238. (And indeed, no such evidence was found.) This Court should accordingly conclude that the search warrant was not supported by probable cause, and suppress any and all evidence discovered as a result of the execution of that invalid search warrant. That includes evidence discovered in the course of the execution of both the first and second search

6

warrants, as well as statements made in the course of questioning conducted as a result those illegal searches.

## CONCLUSION

For these reasons, the motion to suppress should be granted.

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender


s/ Matthew C. Golla
MATTHEW C. GOLLA
Assistant Federal Public Defender
633 - 17th Street, Suite 1000
Denver, Colorado 80202
Telephone: (303) 294-7002
FAX: (303) 294-1192
E-mail: Matt_Golla@fd.org
Attorney for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on September 8, 2020, I electronically filed the foregoing

**MOTION TO SUPPRESS**

with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

    David Tonini, Assistant United States Attorney
    E-mail: david.tonini@usdoj.gov

and I hereby certify that I have mailed or served the document or paper to the following non-CM/ECF participants in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

    Bradley Bunn    (via U.S. Mail)

    */s/ Matthew C. Golla*
    Matthew C. Golla
    Assistant Federal Public Defender
    633 17th Street, Suite 1000
    Denver, CO 80202
    Telephone: (303) 294-7002
    FAX: (303) 294-1192
    Matt_Golla@fd.org
    Attorney for Defendant