# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Christine M. Arguello

Criminal Action No. 20-cr-00158-CMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

BRADLEY BUNN,

    Defendant.

## ORDER DENYING MOTION TO SUPPRESS

This matter is before the Court on Defendant Bradley Bunn's Motion to Suppress. (Doc. # 56.) The Government filed a Response on September 24, 2020. (Doc. # 59.) For the following reasons, Mr. Bunn's Motion is denied.

## I.     BACKGROUND

On April 30, 2020, two individuals[1] separately contacted the Denver Police Department ("DPD") to report concerns regarding Mr. Bunn. Specifically, RP1 indicated that he met Mr. Bunn "at the Pawnee Grasslands in an area designated for shooting firearms" several days earlier. (Doc. # 60-1 at 7.) RP1 stated that he heard "fully automatic gunfire" coming from over a nearby hill. (*Id.*)

---

[1] Both individuals are identified by name in the affidavit that law enforcement submitted in support of its request for a search warrant. *See* (Doc. # 60-1). The Court refers to the individuals as Reporting Party ("RP") 1 and 2 in this Order for safety purposes.

RP1 is "an ammunition reloader," and he "went around the hill to ask whoever was shooting if he could collect the brass for reloading." (*Id.*) At that point, he saw a man, who later identified himself as Mr. Bunn, place "an AR style rifle into the back of a dark colored truck . . . ." (*Id.*) Mr. Bunn was with two other men at the time.

After giving RP1 permission to collect the spent ammunition, Mr. Bunn introduced himself and invited RP1 to "an open carry, 2nd amendment rights event in Denver on May 1, 2020." (*Id.* at 7–8.) RP1 believed Mr. Bunn to be a "real radical" because he "stated something like 'If they kill us we win. If we kill them we win.'" (*Id.* at 8.)

A second individual, RP2, contacted DPD on April 30, 2020. RP2 is friends with Mr. Bunn, and they share "strong beliefs around the 2nd amendment and think that it needs to be defended." (*Id.*) RP2 informed DPD that Mr. Bunn "had been trying to recruit [RP2] to come to a rally on Friday, May 1, 2020 at the state capitol in Denver, CO." (*Id.*) Additionally, RP2 indicated that Mr. Bunn intended to "engage with firearms if police officers attempted to stop, contact or arrest them." (*Id.*) Notably, RP2 stated that Mr. Bunn and other demonstrators "would be carrying AR-15's, AK-47's and handguns." (*Id.* at 9.)

Through coordination with agents at the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), law enforcement discovered that Mr. Bunn did not have any firearms registered, which is a requirement to legally possess a fully automatic firearm. (*Id.* at 8.) Consequently, law enforcement applied for a search warrant of Mr. Bunn's home related to a violation of 18 U.S.C. § 922(o), unlawful possession of a machinegun.

United States Magistrate Judge Michael E. Hegarty issued the search warrant on May 1, 2020, at 1:05 a.m. (*Id.* at 15.) Law enforcement officers executed the warrant at 7:00 a.m. that same morning, as Mr. Bunn was preparing to attend the Second Amendment rally. (Doc. # 59 at 6.) Law enforcement did not discover a machinegun in Mr. Bunn's home. However, they did find several firearms, ammunition, and multiple homemade explosive devices.

## II. DISCUSSION

Under the Fourth Amendment, no warrant shall issue "but upon probable cause." U.S. Const. amend. IV. "An affidavit establishes probable cause for a search warrant if the totality of the information it contains establishes the fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Barajas*, 710 F.3d 1102, 1108 (10th Cir. 2013) (internal quotations omitted). The affidavit must create a nexus between the particular place to be searched and the suspected criminal activity. *Id.* Ultimately, an affiant must present adequate information to a magistrate by which the magistrate can find probable cause. *Id.*

Courts provide "**great deference**" to a magistrate judge's probable cause determination and "review 'merely to ensure the Government's affidavit provided a '**substantial basis**' for reaching that conclusion.'" *United States v. Sadlowski*, 948 F.3d 1200, 1203 (10th Cir. 2020) (emphasis added) (quoting *United States v. Biglow*, 562 F.3d 1272, 1280 (10th Cir. 2009)). However, the magistrate judge must not ratify the bare conclusions of others or reach a decision by "piling hunch upon hunch." *United*

States v. Roach*, 582 F.3d 1192, 1200 (10th Cir. 2009) (quoting *United States v. Valenzuela*, 365 F.3d 892, 897 (10th Cir. 2004)).

In the instant case, there was a substantial basis for Judge Hegarty's probable cause determination. That conclusion is supported by the following information in the affidavit Judge Hegarty reviewed in support of the search warrant request:

- RP1 heard automatic gunfire coming from the area in the firing range where Mr. Bunn was shooting, and he saw Mr. Bunn place an assault style or "AR" rifle in his vehicle (Doc. # 60-1 at 7);
- RP1 reported that he "knows the difference between what a bump stock and fully automatic gunfire sound[s] like" (*id.*);
- RP1 has a substantial basis of knowledge regarding firearms and how they function, as he is an "ammunition reloader," who collects spent ammunition and recycles it (*id.*);
- RP2 reported that Mr. Bunn and other demonstrators at the May 1, 2020 event would be carrying firearms including AK-47s, which have the capacity to be automatic[2] weapons (*id.* at 9);
- Mr. Bunn was not registered as an owner of an automatic weapon (*id.* at 8);

---

[2] The affidavit does not explicitly indicate that AK-47s have the capacity to be automatic weapons. However, that fact "is generally known" and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *AK-47 Soviet firearm*, ENCYCLOPAEDIA BRITANNICA, www.britannica.com/technology/AK-47 (last visited Sept. 27, 2020) ("Built around a 7.62-mm round with a muzzle velocity of some 700 metres per second, it [has] a cyclic firing rate of 600 rounds per minute and [is] capable of **both semiautomatic and automatic fire**." (emphasis added)); *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007) ("It is not uncommon for courts to take judicial notice of factual information found on the world wide web.").

4

- The affiant indicated that based on his "training, experience, and discussions with other federal agents related to the investigation of National Firearms Act (NFA) violations, this affiant is aware that most firearm owners maintain their firearms in their residences and often in locked safes." (*Id.* at 12);
- The affiant further indicated that "[l]aw enforcement [had] reason to believe that Bunn intends to leave his residence before 8:00 am on May 1, 2020 to attend the [Second Amendment] rally." (*Id.*)

In summary, RP1 perceived that automatic gunfire was coming from Mr. Bunn's direction, and he saw that Mr. Bunn was carrying an assault style firearm. RP2 supplemented the information RP1 provided by reporting that Mr. Bunn and other demonstrators at the May 1, 2020 event intended to carry automatic weapons. However, Mr. Bunn was not authorized to possess such a weapon. Finally, the affiant indicated that it was likely for Mr. Bunn's firearms to be located in his home.

Based on these facts, Judge Hegarty had a "substantial basis" to conclude there was a "fair probability that contraband or evidence of a crime," i.e., illegal possession of a machinegun, would be found in Mr. Bunn's home. Consequently, the search warrant was supported by probable cause.

### III. CONCLUSION

Based on the foregoing, Mr. Bunn's Motion to Suppress (Doc. # 56) is DENIED.

DATED: September 28, 2020

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge