

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00158-CMA

UNITED STATES OF AMERICA,

        Plaintiff,

v.

1. BRADLEY BUNN,

        Defendant.

## PLEA AGREEMENT

The United States of America, by David Tonini, Assistant United States Attorney, and defendant, Bradley Bunn, personally and through counsel, Lisa A. Polansky, submit the following Plea Agreement. This agreement is made pursuant to Fed.R.Crim.P.11(c)(1)(A) and (B).

### I. PLEA AGREEMENT

**A.   Defendant's Obligations.**

    **1.   Counts of Conviction.**

The defendant agrees to plead guilty to Counts One through Five of the Indictment in this case, 20-cr-00158-CMA, which charges one violation of Title 26, United States Code, Sections 5861(f) and 5871, Making Firearms in Violation of the National Firearms Act (NFA) – Destructive Device, and four violations of Title 26, United States Code, Sections 5841, 5861(d), and 5871, Possessing an Unregistered Firearm – Destructive Device.

**2.     Waiver of Appeal.**

The defendant is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. Understanding this and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence unless it meets one of the following three criteria: (1) the sentence imposed exceeds the maximum penalty provided in the statute of conviction, (2) the sentence exceeds the advisory Guidelines range for an offense level of 19, or (3) the government appeals the sentence imposed. If any of these three criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea. The parties agree to exclude from this waiver and allow the defendant to appeal the issue raised in his Motion to Suppress (Docket Number 56) and ruled on in the Order Denying Motion to Suppress (Docket Number 63).

The defendant also knowingly and voluntarily waives his right to challenge this prosecution, conviction, or sentence and/or the manner in which it was determined in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255. This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds: (1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing Guidelines or sentencing statute; (2) the defendant was deprived of the effective assistance of counsel; or (3) the defendant was prejudiced by prosecutorial misconduct.

### B. Government's Obligations.

In exchange for the defendant's plea of guilty, the government agrees to recommend the court give the defendant full credit for acceptance of responsibility, unless the defendant engages in conduct that qualifies for the obstruction of justice enhancement under U.S.S.G. §§ 3C1.1 and 3E1.1, comment (note 4) between the time of the guilty plea and sentencing. The government also agrees that the U.S. Attorney's Office for the District of Colorado (USACO) will not seek any additional charges based upon conduct by the defendant that is now known to the USACO. The government also agrees that it will recommend a sentence of imprisonment that is within the advisory guideline range that is calculated by the Court.

### C. Effect of Withdrawal from Plea Agreement.

The parties stipulate and agree that the government may withdraw from this Plea Agreement under any of the following circumstances: 1) if the defendant does not plead guilty to Counts One through Five of the Indictment; 2) if the court does not accept the defendant's guilty plea; 3) if the defendant successfully withdraws his plea, either in the district court or on direct or collateral appeal; 4) if the defendant, at any time after judgment is entered, obtains dismissal, reversal or remand of the counts of conviction for any reason; or 5) if the court rejects this Plea Agreement (or any part thereof), either before, during, or after sentencing.

## II. STATUTORY PENALTIES

The statutory penalty for each of the offenses charged in Counts One through Five of the Indictment is not more than 10 years' imprisonment; a $10,000 fine; or both; not more than 3 years supervised release; and a $100 special assessment fee. The

3

v.3

court will impose a separate sentence on each count of conviction and may, to the extent permitted by law, impose such sentences either concurrently with or consecutively to each other. If probation or supervised release is imposed, a violation of any condition of probation or supervised release may result in a separate prison sentence and additional supervision.

### III. COLLATERAL CONSEQUENCES

The conviction may cause the loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury.

### IV. ELEMENTS OF THE OFFENSE

The parties agree that the elements of the offenses to which the defendant will plead guilty are as follows:

Count One: 26 U.S.C. § 5861(f) – Making of Firearm in Violation of the NFA.

*First*, the defendant knowingly made a firearm as defined by 26 U.S.C. § 5845(a), specifically a destructive device;

*Second*, the firearm was made in violation of the National Firearms Act, specifically 26 U.S.C. §§ 5821, 5822, 5841, and 5842(c).

The term "firearm" is defined in 26 U.S.C. § 5845(a) and includes, "(8) a destructive device[.]"

The term "destructive device" is defined in 26 U.S.C. § 5845(f) and includes, "(1) any explosive, incendiary, or poison gas (A) bomb, (B) grenade . . . and (3) any combination of parts either designed or intended for use in converting any device into a destructive device as defined in subparagraphs (1) and (2) and from which a destructive device may be readily assembled."

4

v.3

The term "make" is defined in 26 U.S.C. § 5845(i) and includes, "various derivatives of such word, shall include manufacturing (other than by one qualified to engage in such business under this chapter), putting together, altering, any combination of these, or otherwise producing a firearm."

The National Firearms Act contains requirements for persons to make firearms, including the following subsections:

- 26 U.S.C. § 5821: A tax levied and paid for the making of a firearm;
- 26 U.S.C. § 5822: "No person shall make a firearm unless" they make an application, pay a tax ... and obtain approval from the Secretary of the Treasury;
- 26 U.S.C. § 5841: "Each ... maker shall register each firearm he ... makes" with the Secretary of the Treasury;
- 26 U.S.C. § 5842(c): "Any firearm classified as a destructive device shall be identified in such manner as the Secretary may by regulations prescribe."

<u>Counts Two – Five: 26 U.S.C. § 5861(d) – Possession of an Unregistered Firearm.</u>

*First*, the defendant knowingly possessed a firearm as defined by 26 U.S.C. § 5845(a), specifically a destructive device;

*Second*, the defendant knew of the specific characteristics or features of the firearm that caused it to be registrable under the National Firearms Registration and Transfer Record;

*Third*, the firearm was in or could readily have been put in operating condition;

*Fourth*, the firearm was not registered to the defendant in the National Firearms Registration and Transfer Record.

10th Cir., Criminal Pattern Jury Instructions, No. 2.91 (2018); *United States v. Gonzales*, 535 F.3d 1174, 1178-79 (10th Cir. 2008).

"[O]ne who possesses two firearms, neither of which is registered to him in the National Firearms Registration and Transfer Record, has twice violated the provisions of 26 U.S.C. § 5861(d) and he may be prosecuted for each violation." *Sanders v. United States*, 441 F.2 412 (10th Cir. 1971).

## V. **STIPULATION OF FACTS**

The parties agree that there is a factual basis for the guilty plea that the defendant will tender pursuant to this plea agreement. That basis is set forth below. Because the court must, as part of its sentencing methodology, compute the advisory Guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

The statement of facts herein does not preclude either party from presenting and arguing, for sentencing purposes, additional facts or factors not included herein which do not contradict the facts to which the parties have stipulated and which are relevant to the Guideline computation under § 1B1.3, or to the sentencing factors found in § 1B1.4 and 18 U.S.C. § 3553(a), or to this court's overall sentencing decision. In "determining the factual basis for the sentence, the court will consider the stipulation of the parties, together with the results of the presentence investigation, and any other relevant information." U.S.S.G. § 6B1.4 Comm.

The parties stipulate to the following facts:

On May 1, 2020, the FBI executed two search warrants at the home of Bradley Bunn, the defendant, located at 5512 Gabriel Drive, Loveland, CO 80538. At the time that the first search warrant was executed, at approximately 7:00 AM, the defendant was the only occupant of the residence.

During the search, FBI personnel discovered four devices, each of which consisted of galvanized steel pipe with external threads and an external end cap on each end. One end cap on each device contained a hole through which a fuse had been inserted as an initiating system. The devices measured 2 inches in diameter and 13.25 inches, 13.5 inches, 9.25 inches, and 9.5 inches in length, respectively.

After removing the devices from the residence following standard explosive ordnance disposal procedures, bomb technicians transported the devices to a range where they successfully conducted a render safe procedure on each device. After the devices were rendered safe, bomb technicians conducted a thermal susceptibility test on the filler found inside the pipe of each device. In each of the devices, the filler reacted violently to flame, indicating it was energetic, or explosive, material.

Based on these characteristics, the parties agree that the four devices are destructive devices, as that term is defined in 26 U.S.C. § 5845(f), and they are regulated in accordance with the Federal Firearm Regulations. The defendant did not register these destructive devices in the National Firearms Registration and Transfer Record, and this was confirmed by the Bureau of Alcohol, Tobacco, Firearms, and Explosives. The defendant also did not comply with any of the regulations concerning

the making of a destructive device, which are set forth in Title 26, United States Code, Sections 5821, 5822, 5841, and 5842(c).

While the search warrants were being executed at the defendant's house, an FBI agent and Task Force Officer conducted a custodial interview of the defendant in a vehicle parked in front of the residence. The defendant was advised of his rights pursuant to the *Miranda* decision, and he waived those rights and agreed to speak.

Approximately two hours into the interview, a FBI Special Agent Bomb Technician (SABT) entered the vehicle to speak with the defendant about the devices found during the search of his house. In response to the SABT's questions, the defendant admitted that he made the devices. He described how he purchased black powder and .308 gunpowder to fill the devices with explosive material. The defendant described that he had tested the devices. He said that he planned to initiate an explosion of the devices, "With a lighter. It's a five to seven second fuse like a grenade. I've repeatedly tested the fuse links. It's a hobby fuse." The defendant said that he ordered the fuses online. He also told the SABT that additional materials such as primers, fuses, pipe parts, and an empty device were located in his house. Agents recovered additional bomb components in the house, including galvanized steel pipes, end caps, shotgun primers, fuses, and several bottles of smokeless powder.

When asked what he planned to do with the devices, the defendant replied, "If I experienced a hard entry, at 3 am, having been an infantry commander, it's really tough to get guys spread out no matter how hard you try. They still want to clump up 'cause of fear, and I know they're there, anyway, blah, blah, blah." The SABT asked, "So a hard entry in the morning, you were going to use them on a bunch of clumped

up guys out front?" The defendant answered, "Fuck yes." Similarly, in Facebook Messenger correspondence that the FBI recovered pursuant to a search warrant, the defendant wrote to a friend about pipe bombs, "Good sir, I'm partial to the 2"x 12" galvanized casing. It's small enough to work with in close quarters yet sufficiently large to turn an entire shielded breach team into manageable sized parts for ziplock backs and 32 oz slurpee cups. It's an excellent choice if you ask me."

## VI. ADVISORY GUIDELINE COMPUTATION

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the court is required to consider seven factors. One of those factors is the sentencing range computed by the court under advisory Guidelines issued by the United States Sentencing Commission. In order to aid the court in this regard, the parties set forth below their estimate of the advisory Guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the Guideline computations, the recitation below identifies the matters which are in dispute.

Offense Level.

    A.    The Guideline for Counts One – Five is U.S.S.G. § 2K2.1.

    B.    Pursuant to § 2K2.1(a)(5), the base offense level is 18.

    C.    Pursuant to § 2K2.1(b)(1), two levels are added because the offense involved 3-7 firearms.

    D.    Pursuant to § 2K2.1(b)(3)(B), two levels are added because the firearm was a destructive device.

E.   The defendant should receive a decrease in his offense level by two levels based upon his acceptance of responsibility pursuant to § 3E1.1(a). The defendant should also receive a decrease in the offense level by one level for timely notifying the government pursuant to § 3E1.1(b). At sentencing, the government will make the appropriate motion for the one-point reduction so long as the defendant does not engage in additional conduct constituting obstruction of justice.

F.   Multiple convictions under § 2K2.1 group under § 3D1.2(d).

G.   The defendant's total offense level is therefore 19.

Criminal History Category.

H.   The parties acknowledge and agree that the estimation regarding the defendant's criminal history is tentative. The defendant acknowledges that the criminal history will be further investigated by the United States Probation Department and ultimately determined by the court. The defendant further acknowledges that any additional facts regarding the criminal history can greatly affect the final Guideline range and result in a longer term of imprisonment. Based upon the facts known at this time regarding the defendant's criminal history, the parties believe that the defendant falls within Criminal History Category ("CHC") I. § 4A1.1.

Guideline Ranges.

I.   The Guideline range resulting from the estimated offense level of 19 and the estimated criminal history category of I is 30-37 months' imprisonment. The imprisonment range at offense level 19 could be from 30 months (bottom of CHC I) to 78 months (top of CHC VI).

J.    Pursuant to § 5E1.2, given an offense level of 19, the fine range for this offense would be $10,000 to $50,000, plus applicable interest and penalties. The top of this range is limited to the statutory maximum, $10,000, for each of five counts of conviction, $50,000.

The parties understand that although the court will consider the parties' estimate, the court must make its own determination of the Guideline range. In doing so, the court is not bound by the position of any party.

No estimate by the parties regarding the Guideline range precludes either party from asking the court, within the overall context of the Guidelines, to depart from that range at sentencing if that party believes that a departure is specifically authorized by the Guidelines or that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the United States Sentencing Commission in formulating the advisory Guidelines. Similarly, no estimate by the parties regarding the Guideline range precludes either party from asking the court to vary entirely from the advisory Guidelines and to impose a non-Guideline sentence based on other 18 U.S.C. § 3553 factors.

The parties understand that the court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

## VII. ENTIRE AGREEMENT

The agreement disclosed to the court is the entire agreement. There are no other promises, agreements, side agreements, terms, conditions, understandings or assurances, express or implied. In entering this agreement, neither the government nor the defendant have relied, or are relying, on any terms, promises, conditions or assurances not expressly stated in this agreement.

Date: 1/13/21

BRADLEY BUNN
Defendant

Date: 2/26/21

LISA A. POLANSKY
Attorney for Defendant

Date: 2/28/21

DAVID TONINI
Assistant U.S. Attorney