## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00158-CMA

**UNITED STATES OF AMERICA,**

Plaintiff,

**v**.

**1.  BRADLEY BUNN,**

Defendant.

---

## DEFENDANT BRADLEY BUNN'S OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT ("PSIR")

---

Defendant, Bradley Bunn, by and through his counsel, Lisa A. Polansky, Attorney at Law, and pursuant to Fed. R. Crim. P. 32(f), hereby submits his objections to the Presentence Investigation Report (hereinafter, "PSIR") dated April 28, 2021 [ECF Doc. #81], as follows:

<u>Lack of Context Regarding Circumstances of Pretrial Incarceration</u>

Beginning with page 3, starting with paragraph 6 and continuing through paragraph 7 on page 4, the United States Probation Officer presents limited information regarding Mr. Bunn's pretrial incarceration in the custody of the U.S. Marshal since May 1, 2020[1],

---

[1] Mr. Bunn has essentially been in the custody of the U.S. Marshal since May 1, 2020. The Court ordered Mr. Bunn to be released on May 13, 2020 and directed him to report to a halfway house [ECF Doc # 20], but Mr. Bunn was not accepted for admission there. Mr. Bunn returned to the custody of the U.S. Marshal on May 14, 2020 and has been continuously incarcerated for about one year at the time of the filing of these Objections.

divorced of any context.

The United States Probation Officer includes that Mr. Bunn was housed in the secure housing unit at the Federal Detention Center ("FDC") in Littleton, Colorado, and states that Mr. Bunn "did not adjust well to his incarceration". The Officer, who ostensibly has access to records at the FDC, does not include any context regarding why Mr. Bunn was transferred to the secure unit.[2]

Further, in paragraph 7, the United States Probation Officer includes that Mr. Bunn was "involved in a fight on April 9, 2021" at the Douglas County Detention Center, but does not explain the circumstances of this "fight". Without context, it is impossible to determine whether Mr. Bunn was the aggressor, or simply forced to act in self-defense.[3]

Mr. Bunn, through his counsel, objects to the PSIR's contextless characterization of events that took place during his pretrial incarceration.

<u>Applicability of Policy Statements</u>

On page 27, the United States Probation Officer considers which factors present in this case may warrant departures.

Sentencing courts have no authority to depart from the sentencing guidelines on the basis of circumstances which are adequately taken into consideration by the Sentencing Commission. *United States v. Smith*, 930 F.2d 1450, 1453 (10th Cir. 1991).

The PSIR recommends invoking a Policy Statement which is inapplicable because the offense conduct is contemplated by the guidelines, in that an enumerated

---

[2] Undersigned counsel has requested records from the FDC which may provide greater context as to the circumstances of Mr. Bunn's placement in the secure housing unit.
[3] Undersigned counsel has requested records from the Douglas County Detention Center which may provide greater context as to the altercation in which Mr. Bunn was involved.

enhancement has already been applied. The PSIR does not recommend the application of a relevant and appropriate policy statement, based on the Officer's own failure to obtain records and questionable decision to rely on biased hearsay in lieu of verifiable documentation.

These Objections discuss only those two Policy Statements that were mentioned in the PSIR; Mr. Bunn intends to argue the applicability of other germane Policy Statements in the Motion for Variance that will be submitted herein.

*Failure to Consider Nature of Military Service*

The United States Probation Officer declines to recommend the application of the departure delineated by the Policy Statement in §5H1.11, which states that "Military service may be relevant in determining whether a departure is warranted, if the military service, individually or in combination with other offender characteristics, is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines."

"Our Nation has a long tradition of according leniency to veterans in recognition of their service, especially for those who fought on the front lines ...." *Porter v. McCollum*, 558 U.S. 30, 43, 130 S. Ct. 447, 455 (2009). Mr. Bunn's military service was lengthy and extraordinary in nature: Mr. Bunn was in the service of the U.S. military for nineteen years, during which he was on the front lines of combat in the Iraq War, achieved the rank of Captain and was awarded a Combat Action Badge. As a result of combat in Iraq, Mr. Bunn acquired significant hearing loss, severe post-traumatic stress disorder, and a serious head injury.

Despite Mr. Bunn's great sacrifice and nearly two decades of service to his country, the United States Probation Officer recommends that the departure should not apply. This is apparently because that Officer failed to obtain collateral information which would verify the circumstances of Mr. Bunn's discharge from the military. The Officer states that "it is of interest that [Mr. Bunn] did not receive any form of retirement or pension after such a significant period of service," injecting innuendo that Mr. Bunn's discharge from the military was in some way questionable. According to paragraph 102, on pages 22 and 23, this impression is evidently based on information received from Mr. Bunn's ex-wife, from whom he separated nearly ten years ago, under rather contentious circumstances. See PSIR, page 12 at paragraph 56.

Curiously, the PSIR states in paragraph 98, on page 22, that according to records found in this case's discovery, Mr. Bunn was honorably discharged from the United States Military.  It is unclear why unverified hearsay from Mr. Bunn's former spouse, whose animus against Mr. Bunn is clear, is lent credibility as a source of information where objective records are available to confirm his honorable discharge.

Mr. Bunn, through his counsel, objects to the PSIR's unwarranted disregard towards and minimization of his nineteen years of service to the United States and asserts that the downward departure authorized in recognition of his exceptional service should apply.

*Public Safety Departure Inapplicable*

The United States Probation Officer opines that an upward departure is warranted under the Policy Statement in §5K2.14, which states that: "If national security, public

4

health, or safety was significantly endangered, the court may depart upward to reflect the nature and circumstances of the offense."

Mr. Bunn, through his counsel, objects to the United States Probation Officer's recommendation that this Policy Statement apply as grounds for an upward departure.

First, Mr. Bunn objects broadly to the application of a Policy Statement as justification for an upward departure to the offenses herein. The conduct to which Mr. Bunn has pleaded guilty is clearly congruent with and contemplated by the statutes which proscribed that conduct. Pursuant to §5K2.0(a)(1)(A), which enumerates permissible grounds for departures, in the case of offenses other than child crimes and sexual offenses: "The sentencing court may depart from the applicable guideline range if... the court finds, pursuant to 18 U.S.C. § 3553(b)(1), that there exists an aggravating or mitigating circumstance." To depart from the guidelines, the Court must "find[] that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines …" *Id.*

Furthermore, the specific Policy Statement invoked by the United States Probation Officer is inapplicable to the offenses herein. Mr. Bunn pleaded guilty to one count of Making Firearms in Violation of the National Firearms Act- Destructive Device, and four counts of Possessing an Unregistered Firearm- Destructive Device. Citing §2K2.1, comment. (n. 7), the United States Probation Officer notes that "A defendant whose offense involves a destructive device receives both the base offense level from the subsection applicable to a firearm listed in 26 U.S.C. § 5845(a) …, and the applicable

enhancement under subsection (b)(3) [of §2K2.1].  Such devices pose a considerably greater risk to the public welfare than other National Firearms Act weapons." It is clear, then, that the greater risk presented by destructive devices, as compared to National Firearms Act weapons, is contemplated by, and addressed by subsection (b)(3) of §2K2.1. In other words, the Guidelines consider and account for the difference between a conviction based on the possession of firearms and a conviction based on the possession of destructive devices. Nonetheless, the United States Probation Officer states as rationale for the application of this departure that: "The devises [sic] posed a considerably greater risk to the public welfare than other National Firearms Act weapons such as a short-barreled shotgun, fully automatic rifle, or suppressor."  This is contrary to the law governing departures, as the enhancement found in §2K2.1(b)(3)(B) clearly contemplates and addresses the greater danger posed by the possession of destructive devices versus the possession of firearms.

Comment n.7 to §2K2.1 further states that departures may be warranted "[i]n a case in which the cumulative result of the increased base offense level and the enhancement under subsection (b)(3) does not adequately capture the seriousness of the offense because of the type of destructive device involved, the risk to the public welfare, or the risk of death or serious bodily injury that the destructive device created…" Offenses relating to destructive devices "… involve different degrees of risk to the public welfare depending on the type of destructive device involved and the location or manner in which that destructive device was possessed or transported. For example, a pipe bomb in a populated train station creates a substantially greater risk to the public welfare, and

a substantially greater risk of death or serious bodily injury, than an incendiary device in an isolated area." §2K2.1, comment. (n. 7).  Under the circumstances presented by this case, no further departure is warranted. Nobody was injured—much less killed—as a result of Mr. Bunn's possession of destructive devices in his home. Mr. Bunn did not transport these destructive devices at all, much less to a populated area. Mr. Bunn did not threaten to or announce any intention to transport these destructive devices to a populated area. The comparison of Mr. Bunn's possession of destructive devices in his home to instances where an individual brought such devices to a heavily populated area is not apt. *See United States v. Dye*, No. CR 19-1819 JB, 2020 U.S. Dist. LEXIS 232, at *20 (D.N.M. Jan. 2, 2020) (Enhancement under §2K2.1(b)(3)(B) applied where defendant possessed between fifty-five and eighty stolen firearms and a grenade in his home; no public safety departure under §5K2.14 applied);  *cf. United States v. Michael*, 894 F.2d 1457, 1459 (5th Cir. 1990) (Application of public safety departure under §5K2.14 upheld where the defendant was proven to have experimented with bomb-making for several years, had previously made two additional bombs for which he was not charged in the instant offense, and had placed a bomb underneath a coworker's car. "The   latter act was found to show a disregard for human beings or property and an intent to bring about harm or damage to individuals, life, or property.")

Courts have previously rejected upward departures under §5K2.14 in firearm cases. In one case, the reviewing court explicitly stated that, where the sentencing court departed upwards based on the number of firearms, the unlawful intent behind their use, and the fact that the firearms were untraceable, that: "[b]ecause the Guidelines clearly

contemplate the very activities charged in these cases, the departure was not lawful." *United States v. Uca*, 867 F.2d 783, 790 (3d Cir. 1989). The same is true here— §2K2.1(b)(3)(B) explicitly accounts for the possession of destructive devices. "Public safety represents a prime consideration whenever restrictions are placed on guns. If any doubt about this existed, the fact that the Guidelines governing firearms violations are included in a part entitled 'Offenses Involving Public Safety' removes that doubt. <u>Since the applicable Guideline does take public welfare into consideration, this court must ask whether danger to the public arising from the facts of this case was 'present to a degree substantially in excess of that which ordinarily is involved in the offense of conviction.</u>'" *Uca*, 867 F.2d 783 at 790 (emphasis added). Obviously, "[t]he danger from a pipe bomb comes not from the offense of possession, but from the added factor of use of the pipe bomb." *United States v. Hull*, 456 F.3d 133, 139 (3d Cir. 2006) (determining that the District Court erred in holding that possession of a pipe bomb, on its own, legally constituted a federal crime of violence).

To apply the enhancement in a case where the evidence reflects the mere possession of a destruction device contravenes the intent of the Policy Statement: the risk posed by Mr. Bunn's possession of destructive devices is the very same risk contemplated by the sentencing guidelines in crafting the §2K2.1(b)(3)(B) enhancement to the base offense level.  Inasmuch as the Court must find that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines in order to depart from those guidelines, the application of §5K2.14 in this instance is

impermissible. §5K2.0(a)(1)(A),

Speculation

Mr. Bunn objects to the injection of the United States Probation Officer's speculation in the PSIR, speculation which appears to be intended to bolster notions presented by the PSIR regarding Mr. Bunn's prospective dangerousness and the applicability of the Public Safety departure under §5K2.14.

Specifically, in paragraph 22 which begins on page 6 and continues onto page 7, the Officer includes snippets of a conversation between himself and FBI Agent Benjamin Harris. According to the Officer's recounting of the conversation with the Agent, Agent Harris expressed that it was his belief that one day in the future, Mr. Bunn might try to obtain firearms subsequent to his conviction as a felon herein, which would be illegal. This is pure speculation. It is not based on statements made by Mr. Bunn or anybody else, nor actions taken by Mr. Bunn or anybody else. Attempting to support this conjecture, the Officer discusses one Chevy McGee, a friend of Mr. Bunn's. The Officer indicates that Mr. McGee posted on his Facebook page about the same Denver rally Mr. Bunn intended to attend prior to his arrest, while Mr. Bunn was banned from posting on Facebook, and that Mr. McGee videotaped the execution of the warrant in this case at Mr. Bunn's residence. The Agent is of the opinion that McGee "looked up to [Mr. Bunn] and likely viewed him as a mentor." The Officer further describes that Mr. McGee "has reportedly purchased numerous firearms through the assistance of his parents." This allegation about Mr. McGee and his family has no relationship to Mr. Bunn whatsoever, nor does it have any bearing on his culpability for the charges in this case and what

sentence should be imposed.  The Officer suggests that Mr. Bunn's friendship with Mr. McGee should factor into the sentencing determination, injecting naked speculation that Mr. McGee might engage in nefarious activities at the behest of Mr. Bunn, simply because the two are friends.[4] This imaginative conjecture has no place in crafting an appropriate sentence for Mr. Bunn.

The Officer's own speculation as to Mr. Bunn's friendship with Mr. McGee is not the only place in the PSIR where speculation about Mr. Bunn's prospective "dangerousness" is found. Exhibit B to the PSIR is a sixty-five page "Threat Assessment". The Overview of the Assessment states that "the purpose of a Threat Assessment is not to predict violence but is rather to inform an agency regarding possible threat management considerations of potentially disruptive and/or violent individuals." [Exhibit B to the PSIR at p 2.] However, the Assessment goes on to characterize Mr. Bunn's "Risk Trajectory", appearing to make projections as to his past behaviors, and how they may present in the future. §5K2.14 specifically requires a court to look at the dangerousness of the defendant at the time of the crime, not his future dangerousness, in asking whether public safety "**was** significantly endangered" through the "nature and circumstances of the offense" (emphasis added), in the past tense.  *See United States v. Moses*, 106 F.3d 1273, 1278 (6th Cir. 1997) ("[§5K2.14] requires a court to look at the offense committed and the dangerousness of the defendant at the time of the crime, not the future dangerousness of the defendant.")

---

[4] It is also worth noting that according to this case's Discovery (*See* INV_80), Mr. McGee was suffering from Stage 3 cancer as of May 2020.

As a result, the use of a prospective Threat Assessment and the invocation of speculation about Mr. Bunn's friendship with Mr. McGee to increase Mr. Bunn's punishment herein is inappropriate, inapposite, and mostly importantly, forbidden by the Sentencing Guidelines.

<u>Inclusion of Prejudicial and Extraneous Information</u>

Mr. Bunn further objects to the inclusion of prejudicial and extraneous information in the PSIR, which has no bearing on the sentencing determination before this Court.

The PSIR further describes, on page 13 in paragraph 59, that Ms. Mikal Trace Taylor, Mr. Bunn's close friend and former partner was once issued a summons for disorderly conduct with a weapon, an incident the Officer characterizes as Ms. Taylor "brandishing a firearm during a road rage incident". The misdemeanor criminal history of Mr. Bunn's friend is irrelevant, prejudicial and misplaced in the PSIR.

THEREFORE, Defendant Bradley Bunn, by and through counsel, respectfully submits these objections to the PSIR filed herein. [ECF Doc. #81.]

DATED: May 9, 2021.

Respectfully submitted,

s/Lisa A. Polansky
Lisa A. Polansky, Attorney
Polansky Law Firm, PLLC
4999 Pearl East Circle, Suite 201
Boulder, Colorado 80301
(303) 415-2583
lisa@polanskylawfirm.com

**CERTIFICATE OF SERVICE**

I hereby certify that on May 9, 2021, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all other counsel of record.

s/Alison P. Gordon